JL

WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| Calvin Clinton Ward, | No.   CV-24-02468-PHX-JAT (JZB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Thomas Arbaugh, et al., | |
| Defendants. | |

Plaintiff Calvin Clinton Ward, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will join Ryan Thornell, in his official capacity only, as a Defendant; order Defendants Thomas, O'Brien, McKone, and Gulley to answer portions of Counts One and Two of the Complaint; order Defendant Thornell, in his official capacity only, to answer Plaintiff's claims for injunctive relief; and will dismiss Count Three and the remaining Defendants without prejudice.

## I.   Application to Proceed In Forma Pauperis and Filing Fee

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $25.85. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.

28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (per curiam)).

**III.    Background**

Plaintiff has another civil rights case relating to the exercise of his religion pending in this Court. *Ward v. Shinn*, CV-22-00998-PHX-JAT (D. Ariz. 2022). In that case, Plaintiff alleges that Defendants violated his right to exercise his religion and his right to equal protection with respect to requests for religious accommodations to grow a full-length beard and possess various religious items for his personal practice, including, as relevant here, a Hlath. A bench trial is scheduled for February 25, 2025.

**IV.    Complaint**

In his three-count Complaint, Plaintiff sues Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) Deputy Assistant Director Rod McKone, Deputy General Counsel Haley Brown, Director of Chaplaincy Services Thomas Arbaugh, Appeals Administrator Julie Bowers, ASPC-Lewis Senior Chaplain William Thomas, Chaplain Dale Gulley, Deputy Warden Joshua Suckle, Assistant Deputy Wardens Raymond O'Brien and Joshua Wilson, and Grievance Coordinator Crystal Pomerantz. Plaintiff asserts claims regarding the exercise of his religion and equal protection under the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, and 42 U.S.C. § 1985(3). Plaintiff names each Defendant in his or her official and individual capacities. He seeks declaratory, monetary, and injunctive relief, as well as his fees and expenses for this case.

Plaintiff alleges the following:

Plaintiff began studying Odinism approximately 40 years ago. In 1998 or 1999, he became a devout adherent of Odinism. Odinism, which is sometimes called Asatru, Wotanism, or Heathenism, is an established religion that is officially recognized throughout the federal and state penal systems in the United States. Plaintiff is an official member of the Asatru Religious Community and a recognized member of the Might of Mjollinir Kindred.

Plaintiff claims Defendants violated his rights with respect to five requests for

religious accommodations.

**Request for Sacred Land**

On February 18, 2024, Plaintiff submitted an inmate letter to the ADCRR Chaplaincy asking what procedure needed to be followed to seek approval for sacred land for the Odinist/Asatru faith community to use for group ceremonies. Plaintiff also asked what "information/documentation needed to be provided to get this done." On March 6, 2024, Defendant Thomas responded to Plaintiff's Inmate Letter, stating that there was no sacred land area for the Odin faith.

On March 12, 2024, Plaintiff submitted an informal complaint requesting approval for sacred land for the Odinist/Asatru faith community, similar to what the Native American faith community is provided, to be used for group ceremonies. Plaintiff stated that he had been seeking approval for sacred land for almost two decades. He outlined the details of his sacred land request, including the size and specifics "of what was needed," and he explained why sacred land was required and attached documentation to support his request. On March 22, 2024, Defendant Thomas denied Plaintiff's request, stating that he was unable to accommodate the request because "the designation of sacred land within the correctional facility is not a practice that aligns with the tenets of Odinism or the policies outlined in Department Order (DO) 904." Defendant Thomas also stated that the designation of specific sacred sites within a correctional setting is not a fundamental requirement for practicing Odinism/Asatru and advised Plaintiff to find alternative ways to practice his faith.

On March 26, 2024, Plaintiff submitted a grievance. Plaintiff wrote that he sincerely believes that sacred land is essential to perform Odinist/Asatru group ceremonies and complained that the documentation he had submitted to support his request was "clearly being ignored." Plaintiff pointed out that DO 904 recognized the designation of specific sacred sites within the ADCRR correctional setting for the Native American community, which had sacred land on almost every unit within ADCRR. Plaintiff explained that the Odinist/Asatru faith community had tried alternative ways to perform their group

ceremonies but none of the alternatives had worked because they were "constantly inter[r]upted by intruders" and they were still being required to worship with other groups that have "completely different beliefs."  Plaintiff also pointed out that the documentation he had submitted demonstrated that tradition required that Odinists/Asatruars perform their sacred rituals in a group setting on their own sacred land.

On April 11, 2024, Defendant O'Brien, through Defendant Pomerantz, denied Plaintiff's grievance.  Defendants stated that the designation of sacred sites within a correctional setting is not a fundamental requirement for practicing Odinism/Asatru and that the lack of a sacred site for the practice of the Odinist faith does not impose a substantial burden on Plaintiff's religious practice.  Plaintiff again was advised to find alternative ways to practice his faith.

On April 12, 2024, Plaintiff submitted a first-level grievance appeal.  Plaintiff wrote that DO 904 included provisions for sacred land for the Native American community in Arizona prison and that almost every unit in ADCRR had sacred land for Native Americans.  Plaintiff stated that he sincerely believes that sacred land is required to perform Odinist/Asatru sacred rituals in a group setting and that he had provided documentation to demonstrate this belief, but the documentation was still being ignored.

On May 13, 2024, Defendant Bowers, through Defendant McKone, denied Plaintiff's grievance appeal.  Defendants again stated that the designation of sacred land within the correctional facility is not a practice that aligns with the tenets of Odinism or the policies outlined in DO 904 and that the designation of sacred sites within a correctional setting is not a fundamental requirement for practicing this faith.

On May 14, 2024, Plaintiff submitted a second-level grievance appeal.  Plaintiff asserted that all the responses he had received throughout the grievance process had been "just cut-and-paste responses," no one had conducted a "full and fair" investigation, and all decisionmakers had completely ignored the documentation Plaintiff had submitted to support his request.  Plaintiff also reiterated the assertions from his previous grievances. On June 13, 2024, Defendant Brown denied Plaintiff's second-level grievance appeal.

On June 22, 2024, Plaintiff and the rest of the Odinist/Asatru faith community at Barchey Unit tried to perform one of their sacred rituals (summer finding) in a group setting on the yard, but they were harassed, photographed, and videotaped by staff.

**Request to Fast and Vow Silence**

On January 11, 2024, Plaintiff submitted an inmate letter requesting a religious accommodation to abstain from food and speaking for nine days and nights. Plaintiff outlined the reasons for his request "in complete detail" and stated that the request was "critical to his study and practice of Odinism." On January 25, 2024, Defendant Gulley responded to Plaintiff's request, asking Plaintiff to provide "authoritative text that mandates" Plaintiff's request to abstain from food. Defendant Gulley did not address Plaintiff's request to vow silence.

On January 30, 2024, Plaintiff submitted an informal complaint requesting to fast and vow silence for nine days and nights, four times per year. Plaintiff stated there was no authoritative text in Odinism demonstrating that his request was "mandated" because Odinism "lacked the concept of 'religious compulsion.'" Plaintiff explained that Odinism emphasized inward spiritual maturity rather than obedience to religious mandates and that it was impossible for him to demonstrate that his request was "required." Plaintiff stated that it was his "personal belief" that abstaining from food and speaking for nine days and nights would help him in his personal regimen and show his dedication and commitment to Allfather Odinn. Plaintiff also pointed out that DO 904.4.0 supported his request, and nothing in DO 904 required a prisoner to provide an authoritative text demonstrating that a requested religious accommodation is "mandated" to obtain approval for the accommodation. Plaintiff did not receive a response to the informal complaint.

On February 21, 2024, Plaintiff submitted a grievance. Plaintiff pointed out that he had never been interviewed by anyone from the ADCRR Chaplaincy to determine his beliefs were sincerely held and rooted in a religious belief, and that he had offered to provide Defendant Gulley with religious documentation that explained the reasons and purpose for his request, but Gulley "had never taken [P]laintiff up on this offer."

On February 23, 2024, Defendant O'Brien, through Defendants Pomerantz and Thomas, denied Plaintiff's grievance. Defendants stated that all religious accommodations had to be supported by a religious text supporting the accommodation that Plaintiff wished to observe.

On February 29, 2024, Plaintiff submitted a first-level grievance appeal. Plaintiff reiterated the assertions in his informal complaint and grievance. On March 24, 2024, Defendant Bowers, through Defendant McKone, denied the grievance appeal. Defendants stated that all religious accommodations had to be supported by religious text and that Plaintiff had failed to meet these standards. Defendants "acknowledged the importance and significance" of Plaintiff's request to fast and vow silence, but they denied his request because there were no "strict requirements for fasting or vowing silence for 9 days in mainstream Odinism." Defendants also denied the request "for reasons of inmate health, facility security, communication, and dietary standards."

On March 26, 2024, Plaintiff submitted a second-level grievance appeal. Plaintiff reiterated his reasons for appealing the denial of his request and "offered to have medical monitor his condition as much as they liked." Plaintiff stated that he could still communicate with ADCRR administration, staff, and medical staff with pen and paper and/or through his tablet. On May 9, 2024, Defendant Brown denied Plaintiff's request to fast for reasons of inmate health, safety, facility security, and dietary standards. Defendant Brown did not address Plaintiff's request to vow silence.

**Request for Traditional Food and Drink**

On April 8, 2024, Plaintiff submitted an inmate letter seeking to make arrangements for the Odinist/Asatru faith community to purchase traditional food and drink from an approved ADCRR vendor for their four major feast days: Ostara, Midyear, Winter Finding, and Yule. Plaintiff attached a religious calendar to support his request. On April 29, 2024, Defendant Gulley responded to Plaintiff's inmate letter, stating that if Plaintiff wished to purchase religious items outside of what was approved for a group ceremony, he had to follow the property request procedure.

On April 29, 2024, Plaintiff submitted an informal complaint making the same request to purchase traditional food and drink.  Plaintiff pointed out that the Jewish and Muslim faith communities were provided with traditional food and drink for their major holy days.  Plaintiff stated that he was "open to the idea of having the ADCRR kitchen cooking and providing food" for the four major Odinist/Asatru feast days, as long as the food provided was "traditional."  On May 13, 2024, Defendant Thomas responded to Plaintiff's informal complaint, stating that the informal complaint was being reviewed at the Central Office by the faith services administrator.

On May 20, 2024, Plaintiff submitted a grievance again requesting to make arrangements to purchase traditional food and drink for feast days and listed the food and drink he sought to purchase.  On June 1, 2024, Defendant Wilson, through Defendant Pomerantz, responded to Plaintiff's grievance, stating that Plaintiff's request had been forwarded to the faith services administrator for review and that a response would be provided once a decision had been made.

On June 13, 2024, Plaintiff submitted a first-level grievance appeal.  On July 9, 2024, Defendant Bowers denied the grievance appeal because, "per Defendant Arbaugh," the matter was currently being litigated.  Defendant Bowers quoted Defendant Arbaugh as saying that Plaintiff had declined a meeting with Arbaugh and ADCRR legal representatives when they sought a resolution outside of court on May 16, and that Arbaugh could speak with their attorney and "see where [they were] in the process," but Arbaugh was "not prepared to offer anything new at this time."

On July 10, 2024, Plaintiff submitted a second-level grievance appeal.  Plaintiff wrote that Defendant Arbaugh's statement that Plaintiff had declined a meeting with him was untrue and that he had declined to meet with Arbaugh and ADCRR's attorney to try to resolve matters that were pending in federal court that had nothing to do with the issue at hand, that is, making arrangements to purchase traditional food and drink.  On August 13, 2024, Defendant Brown denied Plaintiff's grievance appeal because Plaintiff declined to participate in a meeting with Defendant Arbaugh, and Plaintiff's proposed resolution

1  was "currently being litigated."

2  **Request for Group Ceremonial Religious Items and Communion Supplies**

3  On February 18, 2024, Plaintiff submitted an inmate letter to the ADCRR

4  Chaplaincy explaining that he wanted to seek approval for numerous non-approved group

5  ceremonial religious items and communion supplies to add to the approved items list, so

6  they could be purchased and/or donated by prisoners and their family and friends. Plaintiff

7  asked the ADCRR Chaplaincy what procedure needed to be followed and what

8  documentation needed to be provided to "get this done." On March 6, 2024, Defendant

9  Thomas responded to Plaintiff's inmate letter, outlining the process to have group

10  ceremonial items donated. Defendant Thomas did not address Plaintiff's request to outline

11  the procedure to have group ceremonial items and communal supplies added to the

12  approved items list or Plaintiff's question as to what information or documentation needed

13  to be provided.

14  On April 1, 2024, Plaintiff submitted another inmate letter to the ADCRR

15  Chaplaincy. Plaintiff explained that he had been trying to get religious items and

16  communion supplies added to the approved items list for group ceremonial use for the

17  Odinist/Asatru faith community for nearly two decades. Plaintiff also explained that there

18  were only four group ceremonial religious items on the approved items list for the Asatru

19  religion, there were no communion supplies, and there were no approved items for

20  Odinism, although Odinism and Asatru are "the exact same religion." Plaintiff attached an

21  eight-page list describing the group ceremonial items that he was seeking to add to the

22  approved items list. Plaintiff stated that the requested religious items were essential to

23  perform Odinist/Asatru sacred rituals (Blot, Sumbel, Feast, and various other rites), and

24  without them, Odinist/Asatru group ceremonies are effectively impracticable. Plaintiff

25  offered to participate in an interview with the ADCRR Chaplaincy to explain the

26  importance of Odinist/Asatru rituals and the requested religious items. He also offered to

27  provide books, articles, and other documentation to support his requests.

28  On April 8, 2024, Defendant Thomas responded to Plaintiff's inmate letter, advising

Plaintiff that his letter and request had been forwarded to the Director of Chaplaincy Services for further review and consideration.

On April 29, 2024, Plaintiff submitted an informal complaint.  On May 13, 2024, Defendant Thomas responded to Plaintiff's informal complaint, stating that the complaint had been received and reviewed at the Central Office by the faith services administrator.

On May 20, 2024, Plaintiff submitted a grievance.  On June 11, 2024, Defendant Wilson, through Defendant Pomerantz, responded to the grievance, stating that Plaintiff's request had been forwarded to the faith services administrator for review and that a response would be provided when a decision was made.

On June 13, 2024, Plaintiff submitted a first-level grievance appeal.  On July 9, 2024, Defendant Bowers denied Plaintiff's appeal because, per Defendant Arbaugh, the matter was currently being litigated.  Defendant Arbaugh also stated that Plaintiff had declined a meeting with Arbaugh and ADCRR's legal counsel.

On July 10, 2024, Plaintiff submitted a second-level grievance appeal.  Plaintiff wrote that Defendant Arbaugh's statements that the matter was being litigated and that Plaintiff had declined a meeting with him were "lies."  Plaintiff stated that the issues being litigated in court had to do with individual religious items needed for his individual religious practice, and the issue pertaining to his grievance appeal was group ceremonial items and communion supplies for group practice.

On August 8, 2024, Defendant Brown denied Plaintiff's second-level grievance appeal because Plaintiff declined to participate in a meeting with Defendant Arbaugh and because the "proposed resolution" was currently being litigated.

**Request to Wear Religious Headwear**

On April 15, 2024, Plaintiff submitted an inmate letter requesting approval to wear his "Hlath" (religious headwear) at all times in accordance with his religious beliefs. Plaintiff stated that he sincerely believes that he is required to wear his Hlath at all times to show his dedication and commitment to his faith and his Gods.  Plaintiff offered to participate in an interview to resolve any questions.  On May 1, 2024, Defendant Gulley

responded to Plaintiff's request, stating there was "no approved headwear for the Odinist faith group." Defendant Gulley forwarded Plaintiff's request to Defendant Thomas. During this time, Plaintiff showed Defendant Gulley paperwork demonstrating that he had been approved to wear religious headwear years earlier as an adherent of Asatru. Plaintiff also showed Defendant Gulley paperwork demonstrating that Odinism and Asatru are the same religion.

On May 14, 2024, Plaintiff submitted an informal complaint, stating that he had been approved to wear a Hlath almost two decades earlier and attached supporting documentation. Plaintiff also explained that Odinism and Asatru are the same religion and that Astruars have approved headwear called a "Hlath." Plaintiff pointed out that DO 904.5.6 supported his request. He also stated that he sincerely believes he is required to wear his Hlath at all times.

On May 30, 2024, Defendant Thomas denied Plaintiff's informal complaint, stating there was no approved headwear for the Odinism faith at that time. Defendant Thomas advised Plaintiff that all property requests for Odinism were being reviewed at the Central Office.

On June 4, 2024, Plaintiff submitted a grievance. Plaintiff explained that he had been approved to wear a Hlath 17 years earlier and that a Hlath was an approved religious item for his faith. Plaintiff explained that Asatru and Odinism are the same religion and that he had submitted documentation to the ADCRR Chaplaincy to demonstrate this. Plaintiff stated that all religions with approved headwear were permitted to wear their headwear at all times, but he had been told numerous times by Barchey Unit staff, and the Chaplaincy, that he could not wear his.

On June 18, 2024, Defendant Suckle, through Defendant Pomerantz, stated that after review of DO 904.5.6., the Odinist faith was "not listed as a religion with [] approved headwear." Plaintiff was advised that all property items for the Odinist faith were being reviewed by the Central Office.

On June 20, 2024, Plaintiff submitted a first-level grievance appeal. On July 15,

2024, Defendant Bowers, through Defendant Arbaugh, agreed that the Hlath was on the approved religious items list but that it was not addressed in DO 904.5.6. Defendants stated that "because of this problem," the Chaplains and others "were only following policy as it is written." Defendants advised Plaintiff that they were in the process of making significant changes and that it was reasonable to allow Plaintiff to wear his headwear, just as other faith traditions were permitted to wear theirs.

On August 1, 2024, Plaintiff submitted a second-level grievance appeal because Defendant Arbaugh's response "left several questions unanswered." Plaintiff proposed as a resolution that the Hlath be placed on the approved items list for the religion of Odinism; that Plaintiff be permitted to purchase and possess a Hlath without having to produce documentation of a religious requirement; that he be permitted to wear a Hlath at all times; that he be permitted to wear his homemade Hlath until he could purchase a new one; and that ADCRR staff be ordered to return his homemade Hlath to him.

On August 30, 2024, Defendants Brown and Arbaugh stated that the Hlath was an approved item for individuals who identify with the Odinist tradition, that the purchase and possession of a Hlath had already been reviewed and approved, and that individuals who identify with the Odinist tradition were now permitted to wear their faith-based headwear as outlined for other traditions. Defendants "declined to state or agree" to Plaintiff's proposed resolution, without explaining why. According to Plaintiff, the Hlath has not been added to the approved items list and DO 904.5.6 still does not list Odinism/Asatru as a religion with approved religious headwear.

Plaintiff alleges that all Defendants violated his right to free exercise of religion and denied him equal protection of the law by denying him a reasonable opportunity to pursue his faith compared to prisoners of other faiths.

With respect to his conspiracy claims, Plaintiff alleges that all Defendants "conspired to and did deprive [him of] equal protection of the laws, including the right to free exercise of religion, based upon [his] members[hip in] the Odinisht/Asatru faith community." Plaintiff claims Defendants' "agreements and concerted actions were

designed to discourage" him from practicing his religion, including, but not limited to, knowingly and intentionally refusing to conduct a full and fair investigation, ignoring documentation Plaintiff offered, and "making [his] request not tenable."

## V.    Discussion of Complaint

### A.    Section 1983 Claims

#### 1.    Official Capacity Claims

A suit against a defendant in his or her official capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* A claim against an individual in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Kentucky v. Graham*, 473 U.S. at 166; *Monell*, 326 U.S. at 694.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Plaintiff cannot maintain a lawsuit for damages against Defendants in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise[,] 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted)).

Plaintiff may maintain a lawsuit against Defendants in their official capacities for *prospective* declaratory and injunctive relief because under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for

prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  But not all declaratory and injunctive relief is prospective.  The exception is intended to prevent continuing violations of federal law and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Hindes v. FDIC*, 137 F.3d 148, 166 (3d Cir. 1998) ("The type of prospective relief permitted under *Young* is relief intended to prevent a continuing violation of federal law.").

Here, Plaintiff is seeking retrospective, rather than prospective, declaratory relief. The Court will dismiss Plaintiff's claim for declaratory relief.

As discussed below, the Court will join ADCRR Director Ryan Thornell, in his official capacity only, for the sole purpose of answering Plaintiff's claims for injunctive relief.  Plaintiff's official-capacity claims against the remaining Defendants are duplicative of the official-capacity claim against Thornell.  The Court will therefore dismiss the official-capacity claims against Defendants McKone, Brown, Arbaugh, Bowers, Thomas, Gulley, Suckle, O'Brien, Wilson, and Pomerantz.

## 2.    First Amendment and RLUIPA Claims

### a.    Legal Standards

RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1) - (2).  Therefore, to state a claim under RLUIPA, a plaintiff must allege facts to support that government action has substantially burdened the exercise of the plaintiff's religion without a compelling government interest and by the least restrictive means.  *See Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002).  "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)

(quotations omitted).  Thus, an institutionalized person's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'"  *Id.*

In addition, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). However, free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *Id.*  To state a First Amendment free exercise claim, a plaintiff must allege that a defendant substantially burdened his religious practice without a justification reasonably related to legitimate penological interests.  *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *Warsoldier*, 418 F.3d at 995 (citing *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (pressure on exercise must be substantial)); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (same).  The religious practice or exercise at issue must be rooted in sincerely held religious belief and not in "'purely secular' philosophical concerns."  *Malik*, 16 F.3d at 333 (internal citation omitted).

### b.    Sacred Land

Liberally construed, Plaintiff has stated a First Amendment and RLUIPA claim in Count One against Defendants Thomas, O'Brien, and McKone with respect to his request for sacred land for group ceremonies.  The Court will require Defendants Thomas, O'Brien, and McKone to answer this portion of Count One.  Pursuant to Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure, the Court will join Ryan Thornell, in his official capacity only, as a Defendant for the sole purpose of responding to Plaintiff's request for injunctive relief and will require Thornell to answer this portion of Count One.

### c.    Fasting and Vowing Silence

Liberally construed, Plaintiff has stated a First Amendment and RLUIPA claim in

Count One against Defendants Gulley, O'Brien, Thomas, and McKone with respect to his request to fast and vow silence. The Court will require Defendants Gulley, O'Brien, Thomas, McKone, in their individual capacities, and Thornell, in his official capacity only, to answer this portion of Count One.

### d. Hlath

As noted, in Plaintiff's other pending civil rights case, Plaintiff requested to be allowed to wear a Hlath. Because that issue is already being litigated, Plaintiff cannot assert the same claim in a new case. The Court will therefore dismiss the portion of Count One that pertains to Plaintiff's request to be permitted to wear a Hlath.

### e. Traditional Food and Drinks and Group Ceremonial Items

With respect to Plaintiff's requests to be able to purchase traditional food and drink for major feast days, Plaintiff alleges that Defendant Gulley responded to Plaintiff's inmate letter, stating that if Plaintiff wished to purchase religious items outside of what was approved for a group ceremony, he had to follow the property request procedure. Plaintiff asserts that Defendant Thomas responded to Plaintiff's inmate letter and informal complaint and stated that his requests had been forwarded to the faith services administrator for review, and a response would be provided when a decision was made. Plaintiff claims Defendant Wilson responded to Plaintiff's grievance, stating that Plaintiff's request had been forwarded to the faith services administrator for review and that a response would be provided when a decision was made. Plaintiff does not allege that Defendants Gulley, Thomas, and Wilson *denied* his request; rather, he alleges that Gulley merely informed Plaintiff that he had to follow the property request procedure to purchase religious items beyond what was already approved for group ceremonies, and Defendants Thomas and Wilson only told Plaintiff that his request was being reviewed. Plaintiff's allegations do not support that Defendants Gulley, Thomas, and Wilson's responses, in themselves, substantially burdened his religious exercise.

Likewise, with respect to Plaintiff's request to add various religious items to the approved items list for group ceremonies, Plaintiff alleges that Defendant Gulley told him

that he had to follow the property request procedure to purchase religious items outside of what was approved for a group ceremony; Defendant Thomas told Plaintiff that his informal complaint was being reviewed at the Central Office; and Defendant Wilson told Plaintiff that his request had been forwarded to the faith services administrator for review and that a response would be provided once a decision had been made.  Plaintiff does not allege that Defendants Gulley, Thomas, and Wilson *denied* his requests.  Plaintiff therefore fails to allege facts to support that Defendants Gulley, Thomas, and Wilson substantially burdened his religious practice.

Plaintiff's allegations indicate that the requests for traditional food and drink and to add ceremonial items for group ceremonies were ultimately denied because Defendant Arbaugh erroneously believed that the requests were already being litigated in Plaintiff's other pending civil rights case, and that Plaintiff had declined to meet with Arbaugh and ADCRR's legal counsel about the issues.  Defendant Brown denied Plaintiff's second-level grievance appeals because Plaintiff declined to participate in a meeting with Defendant Arbaugh, and Plaintiff's proposed resolution was "currently being litigated."  Plaintiff's allegations do not support that Defendants Arbaugh and Brown were even aware of what Plaintiff had actually requested.  Defendants Arbaugh and Brown's responses might amount to negligence with respect to their failure to investigate Plaintiff's grievances, but that is insufficient to state a § 1983 claim.  *See Lewis v. Mitchell*, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005) ("Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his Free Exercise rights.  Instead, Plaintiff must allege conscious or intentional acts that burden his free exercise of religion.").  The Court will therefore dismiss the portions of Count One pertaining to Plaintiff's requests to be able to purchase traditional food and drink and to add various religious items and communion supplies to the approved items list for group ceremonies.

### f.    Grievance Procedure

Prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), but prisoners do not have "'a separate

constitutional entitlement to a specific prison grievance procedure," *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).  Accordingly, prisoners cannot bring due process challenges to the processing of their grievances.  *See Ramirez*, 334 F.3d at 860; *see also McRoy v. Roe*, 509 F. App'x 660, 660 (9th Cir. 2013) (affirming dismissal of claims "arising from defendants' processing of and response to his grievances because prisoners do not have a 'constitutional entitlement to a specific prison grievance procedure'") (quoting *Ramirez*, 334 F.3d at 860)).

Plaintiff's allegations against Defendants Pomerantz and Bowers pertain only to their purely administrative role in handling Plaintiff's grievances.  Plaintiff cannot state a claim on this basis.  The Court will therefore dismiss Defendants Pomerantz and Bowers.

### 3.    Equal Protection

Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

For the reasons set forth above with respect to Plaintiff's First Amendment and RLUIPA claims, the Court will require Defendants Gulley, Thomas, O'Brien, McKone, in their individual capacities, and Thornell, in his official capacity only, to answer the portions of Count Two pertaining to Plaintiff's requests for sacred land for group ceremonies and to fast and vow silence.

The Court will dismiss Plaintiff's equal protection claim regarding his request to wear a Hlath as duplicative of his claim in CV-22-00998.  Finally, for the reasons discussed above, Plaintiff cannot state an equal protection claim against Defendants Gulley, Thomas,

Wilson, Arbaugh, and Brown based on his requests to be able to purchase traditional food and drink and to add various religious items and communion supplies to the approved items list for group ceremonies. The Court will therefore dismiss these portions of Count Two.

**B.    Section 1985(3) Claim**

To state a claim under § 1985(3), a plaintiff must allege facts to support (1) the existence of a conspiracy, (2) to deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971) (42 U.S.C. § 1985(3) covered group of Black citizens who were assaulted by a group of White citizens who mistakenly believed the plaintiffs were civil rights workers). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

Additionally, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make a showing of class-based animus "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1985). That is, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) ("Generally, our rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." (internal citations and quotations omitted)).

Plaintiff has alleged no facts to support the existence of a conspiracy. The Court will therefore dismiss Count Three.

## VI.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court.  Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court.  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these

warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

    (1)    Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

    (2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $25.85.

    (3)    Pursuant to Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure, Ryan Thornell, in his official capacity only, is **joined** as a Defendant.

    (4)    Count Three is **dismissed** without prejudice.

    (5)    Defendants Arbaugh, Pomerantz, Bowers, Brown, Wilson, and Suckle are **dismissed** without prejudice. Plaintiff's official-capacity claims against Defendants Thomas, O'Brien, McKone, and Gulley are **dismissed** without prejudice.

    (6)    Plaintiff's request for declaratory relief is **dismissed**.

    (7)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety on the court-approved form for filing a civil rights complaint by a prisoner (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

    (8)    Defendants Thomas, O'Brien, McKone, and Gulley, in their individual capacities, must answer the identified portions of Counts One and Two, as set forth herein. Defendant Thornell, in his official capacity only, must answer Plaintiff's claims for injunctive relief.

    (9)    The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Thornell, Thomas, O'Brien, McKone, and Gulley.

(10)   Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(11)   If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(12)   The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(13)   The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(14)   A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(15)   The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

  (a)   personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(16)    Defendants Thornell, Thomas, O'Brien, McKone, and Gulley must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(17)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(18)    This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 22nd day of November, 2024.

James A. Teilborg
Senior United States District Judge

TERMPSREF