WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin Clinton Ward,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Thomas Arbaugh, et al.,<br><br>　　　　Defendants. | No. CV-24-02468-PHX-JAT (JZB)<br><br>**ORDER** |

Pending before the Court is the Report and Recommendation ("R&R") of the Magistrate Judge, (Doc. 47), recommending the denial of Plaintiff's Motion for Leave to Amend his Complaint, (Doc. 31). Plaintiff timely objected to the R&R, (Doc. 51), and Defendants did not respond. The Court now rules.

**I.　BACKGROUND**

Because Plaintiff states no objection to the R&R's procedural background, the Court adopts it as set forth therein:

> On September 18, 2024, Plaintiff filed a prisoner civil rights complaint against Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR") Deputy Assistant Director Rod McKone, DGC Brown, DCS Arbaugh, Appeals Administrator Julie Bowers, ASPC-Lewis Senior Chaplain William Thomas, Chaplain Dale Gulley, Deputy Warden Joshua Suckle, Assistant Deputy Wardens Raymond O'Brien and Joshua Wilson, and Grievance Coordinator Crystal Pomerantz. (Doc. 1 at 1–2.) Plaintiff alleged violations of his right to "the exercise of his religion and equal protection under the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, and 42 U.S.C. § 1985(3)." (Doc. 6 at 3).
>
> On November 22, 2024, the Court screened Plaintiff's complaint and dismissed: (1) Plaintiff's official-capacity claim against all Defendants

except ADCRR Director Ryan Thornell; (2) Plaintiff's religious dress claim; (3) "portions of Count One pertaining to Plaintiff's request to be able to purchase traditional food and drink . . . ."; (4) Plaintiff's grievance allegations against Defendants Pomerantz and Bowers; (5) Plaintiff's equal protection claim regarding religious dress "as duplicative of his claim in CV-22-00998"; (6) Plaintiff's equal protection claims against Defendants Gulley, Thomas, Wilson, Arbaugh, and Brown based on his request to be able to traditional food and drink; and (7) Plaintiff's § 1985(3) claim. (*Id.* at 14, 16–19.) **Pertinently for the matter at hand, the Court dismissed Defendants Arbaugh and Brown without prejudice.** (*Id.* at 21.) [Emphasis added].

The surviving claims following screening were Plaintiff's: (1) First Amendment and RLUIPA claim with respect to Plaintiff's request for sacred land; and (2) First Amendment and RLUIPA claim with respect to Plaintiff's request to fast and exercise a vow of silence. (*Id.* at 15–16.) The basis for each surviving allegation is summarized below.

A. <u>Request for Sacred Land.</u>

Plaintiff's first surviving claim revolves around the inability to gain approval for sacred land for the Odinist/Asatru community. (*Id.* at 4.) On multiple dates between February 18, 2024, and May 14, 2024, Plaintiff Ward submitted inmate letters, informal complaints, and grievances at multiple levels requesting approval for sacred land for the Odinist/Asatru community. (*Id.* at 4–6.) In these submissions and grievances, Plaintiff alleged that "he sincerely believes that sacred land is essential to perform Odinist/Asatru group ceremonies . . . [and] pointed out that [Department Order] 904 recognized the designation of specific sacred sites within the ADCRR correctional setting for the Native American community, which had sacred land on almost every unit within ADCRR." (*Id.* at 4.) Plaintiff asserted that the responses he received were "just cut-and-paste" and that "no one had conducted a full and fair investigation . . . ." (*Id.* at 5) (cleaned up).

B. <u>Request to Fast and Vow of Silence.</u>

Plaintiff's second surviving claim involves his inability to gain approval for "a religious accommodation to abstain from food and speaking for nine days and nights." (*Id.* at 6). On multiple dates between January 11, 2024, and March 26, 2024, Plaintiff Ward submitted inmate letters, informal complaints, and grievances at multiple levels seeking the ability "to fast and [have a] vow of silence for nine days and nights, four times per year." (*Id.*) While Plaintiff noted that there was no authoritative text in the Odinist/Asatru faith demonstrating that his request was mandatory, it is his "personal belief that abstaining from food and speaking" for that period "would help him in his personal regime and show his dedication and commitment to Allfather Odin[]." (*Id.*)

Plaintiff did not receive approval for either the fast or vow of silence. (*Id.* at 6–7.) In denying Plaintiff's grievance, Defendant O'Brien, through Defendants Pomerantz and Thomas, "stated that all religious accommodations had to be supported by a religious text supporting the accommodation." (*Id.* at 7.) Subsequently, Defendant Bowers, through Defendant McKone, rejected the accommodation "because there was no strict requirements for fasting or vowing silence . . . [in] Odinism" and "for reasons of inmate health, facility security, communication, and dietary standards." (*Id.*) (cleaned up). Finally, DGC Brown denied Plaintiff's

- 2 -

second-level grievance "for reasons of inmate health, facility security, communication, and dietary standards." (*Id.*)

(Doc. 47 at 1–3).

The R&R found that Plaintiff's proposed amended complaint failed to incorporate new and sufficient allegations showing that DCS Arbaugh or DGC Brown substantially burdened his right to free expression of religion regarding both his sacred land request (Count 1), and request to fast and exercise a vow of silence (Count 2). (Doc. 47 at 6–8). Based on this finding, the R&R recommends that the Court decline to reinstate DCS Arbaugh and DGC Brown with respect to both Counts. (Doc. 47 at 7–8).

## II.    STANDARD OF REVIEW

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district judge must review the findings and recommendations of the Magistrate Judge *de novo* only if there is an objection from one or both parties, but not otherwise. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review *de novo* the portions of the [Magistrate Judge's] recommendations to which the parties object"). District courts are not obligated to perform any review of any issue to which no party has objected. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [report and recommendation] to which objection is made.").

## III.   DISCUSSION

Plaintiff objected to the R&R, arguing that his proposed amended complaint sets forth factual allegations that are sufficient to state First Amendment, RLUIPA, and Equal Protection claims against: (1) both DGC Brown and DCS Arbaugh regarding his request

for sacred land, and (2) DGC Brown regarding his request to fast and exercise a vow of silence. (Doc. 51 at 4, 7, 9).

### A. Legal Standards

#### i. First Amendment

Although prisoners "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," their First Amendment rights are limited by the loss of freedom intrinsic to incarceration and by the penological objectives of the institution. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). To state a cognizable Free Exercise claim, a prisoner must allege facts showing that the defendant substantially burdened the practice of the prisoner's religion without any justification reasonably related to legitimate penological interests. *Id.* at 348–50. The religious practice or exercise at issue must be rooted in sincerely held religious belief and not in "'purely secular' philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citation omitted). A substantial burden places "more than an inconvenience on religious exercise," *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013), but it "need not actually force a litigant to change his practices; a violation may occur where the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) (cleaned up).

#### ii. Equal Protection

To state an equal protection claim under § 1983, a "plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

### B. Plaintiff's Objections

Plaintiff claims he has sufficiently pled First Amendment, RLUIPA, and Equal Protection claims against: (1) both DGC Brown and DCS Arbaugh regarding his request for sacred land, and (2) DGC Brown regarding his request to fast and exercise a vow of silence. (Doc. 51 at 4, 7, 9). The Court addresses each of Plaintiff's three objections in turn.

#### i. Objection 1–Request for Sacred Land re: DGC Brown

Plaintiff's original complaint alleged that DGC Brown "denied plaintiff's second level grievance appeal [regarding his request for sacred land]." (Doc. 1 at 15, ¶ 17). Plaintiff's first amended complaint reiterates this allegation and adds the following language: "Defendant Brown stated that the ADCRR had a 'compelling interest to not designate specific plots of land for various religions.' Plaintiff was once again advised to find alternative ways to practice his faith." (Doc. 32 at 13–14, ¶ 11). The R&R found that Plaintiff's attempt to reinstate "Count One: Request for Sacred Land" against DGC Brown was "improper due to [Plaintiff's] failure to cure the deficiencies noted in the Screening Order." (Doc. 47 at 6). The R&R explained that, considering "the Court dismissed DGC Brown in the Screening Order in light of her denial of Plaintiff's second-level grievance, the Court finds that the addition of one statement is insufficient to cure the deficiency noted in the Screening Order." (Doc. 47 at 7, citing Doc. 6 at 5, 15).[1]

Plaintiff asserts that the Screening Order only identified one deficiency regarding DGC Brown—"the fact that Plaintiff improperly attempted to sue DGC Brown in her official capacity."[2] (Doc. 51 at 3, citing Doc. 6 at 14, ¶¶ 15–16). Plaintiff cured this

---

[1] Plaintiff claims the R&R's citation to pages 5 and 15 of the Screening Order was "puzzling" because neither of these pages (nor the Screening Order generally) identify the Court's reasoning for dismissing his individual capacity claim against DGC Brown. (Doc. 51 at 2–3). The Court agrees. Page 15 of the Screening Order does not mention DGC Brown at all, and page 5 merely recounts the procedural history of Plaintiff's request for sacred land, including DGC Brown's denial of his second-level grievance. (Doc. 6 at 5, 15). Because the Screening Order fails to identify a deficiency in Plaintiff's individual capacity claim generally, it necessarily fails to explain how Plaintiff could cure such a deficiency.

[2] The Screening Order dismissed Plaintiff's "official-capacity claims against Defendants McKone, Brown, Arbaugh, Bowers, Thomas, Gulley, Suckle, O'Brien, Wilson, and

deficiency by withdrawing his official capacity claim and proceeding against DGC Brown in her individual capacity. *Compare* (Doc. 1 at 8, ¶ 1 (suing Brown in her official and individual capacity)) *with* (Doc. 32 at 5, ¶ 8 (suing Brown in her individual capacity only)). Plaintiff argues, however, that the Screening Order failed to identify any deficiency regarding his individual-capacity claim against DGC Brown. (Doc. 51 at 2). Plaintiff's amended complaint alleges DGC Brown denied his second-level grievance appeal regarding his sacred land request and that, in doing so, violated his right to equal protection and to freely exercise his religion. (Doc. 51 at 4). He claims these factual allegations sufficiently state First Amendment, RLUIPA, and Equal Protection claims against DGC Brown in her individual capacity. (Doc. 51 at 4).

The Ninth Circuit Court of Appeals has made clear that RLUIPA does not authorize suits against state actors in their individual capacities. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("There is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity."); *see also Fuqua v. Raak*, 120 F.4th 1346, 1357–61 (9th Cir. 2024) (upholding *Wood* and finding RLUIPA affords prisoners with "no constitutionally valid damages" remedy against "individual state and local officials"). Accordingly, Plaintiff's RLUIPA claim against DGC Brown in her individual capacity fails.[3] The Court limits its analysis to Plaintiff's First Amendment and Equal Protection claims.

Because "[l]iability under § 1983 must be based on the personal involvement of the defendant," a plaintiff must allege facts, rather than conclusory statements, showing that "an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. A person deprives another of his constitutional right if "[s]he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [s]he is legally required to do that *causes* the deprivation of which [the plaintiff

---

Pomerantz" because those claims were "duplicative of [Plaintiff's] official-capacity claim against [Defendant] Thornell." (Doc. 6 at 14).

[3] Because the Court is adopting the R&R in its entirety and denying Plaintiff's request to amend his complaint, as noted below, the Court will not revisit the portion of the Screening Order allowing Plaintiff's RLUIPA claims to proceed against Defendants Thomas, O'Brien, McKone, and Gulley in their individual capacities. (Doc. 6 at 15–16).

- 6 -

complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633.

Plaintiff's claim against DGC Brown arises from her review and denial of Plaintiff's second-level grievance appeal regarding his request for sacred land. The relevant question is whether, in denying Plaintiff's grievance, DGC Brown was "personally involved" in the deprivation of Plaintiff's equal protection and first amendment rights.

It is well settled that prisoners cannot bring due process challenges to the processing of their grievances because prisoners are not constitutionally entitled to "a specific grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Accordingly, the denial of a prisoner's grievance typically fails to serve as a basis for individual liability under § 1983. *See McCoy v. Roe*, 509 F. App'x 660, 660 (9th Cir. 2013) (quoting *Ramirez*, 334 F.3d at 860) (affirming dismissal of claims "arising from defendants' processing of and response to his grievances because prisoners do not have a 'constitutional entitlement to a specific prison grievance procedure'"); *see also Brown v. Maricopa Cnty.*, No. CV-24-01942-PHX-JAT (MTM), 2025 WL 2403137, at *4 (D. Ariz. Aug. 18, 2025) (dismissing plaintiff's claim against a defendant who "closed" plaintiff's administrative grievance because he was not entitled to a particular grievance procedure); *Ruelas v. Thornell*, No. CV-24-01808-PHX-JAT (DMF), 2024 WL 4132971, at *5 (D. Ariz. Sept. 10, 2024) ("Plaintiff cannot state a claim against Defendant Shipley based solely on his response to Plaintiff's grievance."); *Rivera v. Thornell*, No. CV-24-1560-PHX-JJT (JFM), 2025 WL 1135256, at *3 (D. Ariz. Jan. 13, 2025), *report and recommendation adopted*, No. CV-24-01560-PHX-JJT (JFM), 2025 WL 1135158 (D. Ariz. Apr. 16, 2025) ("Where the defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievance, the defendant cannot be liable under § 1983.").

However, the Ninth Circuit Court of Appeals has found that denying a prisoner's

grievance can, in limited circumstances, subject an individual to § 1983 liability. If an officer possesses the authority to grant a prisoner's request, but still "denies a constitutionally-required request, or denies an appeal from a denial of such a request, the officer's denial qualifies as direct personal participation" in the deprivation of a prisoner's constitutional rights. *Compare Blake v. Thomas*, No. 23-15151, 2024 WL 5205741, at *1 (9th Cir. Dec. 24, 2024) (reversing district court's grant of summary judgment for defendant because "a reasonable juror could find that [defendant] had authority to grant [plaintiff's] [religious-based dietary] request when he heard plaintiff's grievance" and in that instance, defendant's "denial of that request could qualify as direct personal participation in the alleged deprivation of [plaintiff's] First Amendment free exercise right") *with Elias v. Kinross*, No. 217CV2106WBSDBP, 2022 WL 2705335, at *6 (E.D. Cal. July 12, 2022), *report and recommendation adopted in part, rejected in part*, No. 217CV2106WBSDBP, 2022 WL 14749120 (E.D. Cal. Oct. 25, 2022) (granting summary judgment in defendant's favor because plaintiff presented no evidence that defendant's "investigation and denial of [his] administrative appeal proximately caused the alleged First Amendment violation" when "there [was] no evidence [defendant] held decision-making authority" to resolve plaintiff's complaint).

Defendant DGC Brown serves as ADCRR's Deputy General Counsel. (Doc. 1 at 3; Doc. 6 at 3). Plaintiff fails to allege sufficient facts demonstrating that DGC Brown, in her capacity as the prison's legal counsel, was authorized to grant his request for sacred land. Absent such authority, DGC Brown's denial of Plaintiff's grievance appeal is insufficient to subject her to liability for allegedly violating his First Amendment and Equal Protection rights under § 1983. *Collett v. Mason Cnty.*, No. 3:23-CV-5654-TMC-DWC, 2025 WL 1085790, at *4 (W.D. Wash. Mar. 25, 2025), *report and recommendation adopted*, No. 3:23-CV-5654-TMC-DWC, 2025 WL 1082700 (W.D. Wash. Apr. 10, 2025) (citing *Blake*, 2024 WL 5205741 at *1) (finding plaintiff failed to state a viable claim for relief under § 1983 by alleging that defendant did not accommodate his dietary request because plaintiff did not allege the defendant was "personally involved in determining the composition of

[his] meals" or was "authorized to grant his request for new halal meals with a different composition").

Plaintiff's request to reinstate DGC Brown as a defendant regarding his sacred land request will be denied.

### ii. Objection 2–Request for Sacred Land re: DCS Arbaugh

The R&R found that Plaintiff's attempt to reinstate "Count One: Request for Sacred Land" against DCS Arbaugh was "improper due to [Plaintiff's] failure to cure the deficiencies noted in the Screening Order." (Doc. 47 at 6). Plaintiff argues he is not attempting to "reinstate" DCS Arbaugh because his original complaint never listed DCS Arbaugh as a defendant regarding his request for sacred land. (Doc. 51 at 5). Rather, Plaintiff asserts his amended complaint "sought to add DCS Arbaugh as a Defendant . . . because he denied Plaintiff's request for sacred land after [Plaintiff] submitted his first original complaint." (Doc. 51 at 5).

Indeed, Plaintiff's original complaint did not mention DCS Arbaugh regarding his sacred land request. Plaintiff's amended complaint alleges that he met with DCS Arbaugh to discuss his request on both December 12, 2024 and March 20, 2025. (Doc. 32 at 14, ¶¶ 13–14). Plaintiff further alleges that on June 5, 2025, he "was advised that Defendant Arbaugh and ADCRR leadership had rejected his proposal for sacred land." (Doc. 32 at 14, ¶ 15). The R&R found that DCS Arbaugh's vote to reject Plaintiff's proposal "does not provide sufficient factual matter to find DCS Arbaugh substantially burdened Plaintiff's free exercise right." (Doc. 47 at 7). Plaintiff contends the amended complaint's new allegations demonstrate DCS Arbaugh "had an opportunity to resolve this matter after two meeting[s] with [Plaintiff]" but instead chose to deny his request. (Doc. 51 at 6–7). He claims these factual allegations sufficiently state First Amendment, RLUIPA,[4] and Equal Protection claims against DCS Arbaugh in his individual capacity. (Doc. 51 at 7).

Because Plaintiff seeks to add DCS Arbaugh as a defendant with respect to his sacred land claim, the relevant question is not whether he successfully cured a deficiency

---

[4] As stated above, RLUIPA does not authorize suits against state actors in their individual capacities. *Wood*, 753 F.3d at 904.

- 9 -

in his original complaint, but whether his amended complaint sufficiently pleads a cause of action against DCS Arbaugh for rejecting his sacred land proposal.

Ultimately, the Court need not address the merits of Plaintiff's claim against DCS Arbaugh. Plaintiff alleged that DGC Brown denied his second-level grievance appeal regarding his sacred land request on June 13, 2024. (Doc. 32 at 13, ¶ 11). DGC Brown's denial constituted the end of the grievance process for Plaintiff's request for sacred land. Following the conclusion of that grievance process, Plaintiff met with DCS Arbaugh in December 2024 and March 2025 to discuss his sacred land "proposal," which was rejected in June 2025. It appears these meetings were conducted informally, outside of the normal grievance process, because Plaintiff does not allege he filed a new grievance that was subject to review or that he appealed DCS Arbaugh's rejection. Because Plaintiff provides no evidence that he exhausted the ADCRR's administrative remedies regarding DCS Arbaugh's rejection of his sacred land proposal, the Court will deny Plaintiff's request to add DCS Arbaugh as a defendant.

### iii. Objection 3–Request to Fast and Vow of Silence re: DGC Brown

Plaintiff's original complaint alleged that his request to "abstain from food and from talking for nine days and nine nights" four times per year was denied. (Doc. 1 at 17). Plaintiff specifically alleged that DGC Brown denied his second-level grievance appeal to fast "for reasons of inmate health, safety, facility security, and dietary standards." (Doc. 1 at 20–21). He also alleged that "Defendant Brown completely ignored [his] request to vow silence." (Doc. 1 at 21). The only change Plaintiff made in his amended complaint was omitting the sentence regarding DGC Brown ignoring his vow of silence request. (Doc. 32 at 19, ¶ 29). The R&R found that Plaintiff's attempt to reinstate "Count Two: Request to Fast and Vow of Silence" against DGC Brown was futile due to Plaintiff's failure to cure the deficiencies in his original complaint. (Doc. 47 at 7). Because Plaintiff "fail[ed] to introduce any new allegations or factual assertions" against DGC Brown, the R&R recommends that DGC Brown not be reinstated regarding Plaintiff's request to fast and exercise a vow of silence. (Doc. 47 at 8).

Plaintiff again argues that the only deficiency identified in the Screening Order was Plaintiff's improper attempt to sue DGC Brown in her official capacity,[5] and that the Order failed to identify any deficiency regarding his individual capacity claim against Brown. (Doc. 51 at 8). Plaintiff contends that DGC Brown, by denying his second-level grievance to fast and take a vow of silence, violated his right to equal protection and to freely exercise his religion. (Doc. 51 at 8). He claims these factual allegations sufficiently state First Amendment, RLUIPA, and Equal Protection claims against DGC Brown in her individual capacity. (Doc. 51 at 9).

As noted above, to state a § 1983 claim against a person in their individual capacity, a plaintiff must allege facts, rather than conclusory statements, showing that "an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. Plaintiff's second claim against DGC Brown arises from her review and denial of Plaintiff's grievance appeal regarding his request to fast and exercise a vow of silence. Plaintiff's request to reinstate DGC Brown as a defendant will be denied for the same reasons discussed above.

### iv. Plaintiff's Request to Fast and Vow of Silence re: DCS Arbaugh

Plaintiff's original complaint did not contain any factual allegations regarding DCS Arbaugh in relation to Plaintiff's request to fast and take a vow of silence. His amended complaint, however, added two paragraphs stating that: (1) Plaintiff and DCS Arbaugh met on December 12, 2024 to discuss Plaintiff's request, and (2) on December 23, 2024, DCS Arbaugh "submitted a written decision agreeing to resolve Plaintiff's request to fast and vow silence, except for his request for monetary damages." (Doc. 32 at 19, ¶¶ 29–30). The R&R found that Plaintiff's amended complaint failed to show that DCS Arbaugh substantially burdened Plaintiff's First Amendment right. (Doc. 47 at 8).

Plaintiff claims he is not attempting to add DCS Arbaugh as a defendant regarding his request to fast and take a vow of silence, but instead added paragraphs 29 and 30 to

---

[5] As noted above, Plaintiff's amended complaint cures this deficiency. *Compare* (Doc. 1 at 8, ¶ 1 (suing DGC Brown in her official and individual capacity)) *with* (Doc. 32 at 5, ¶ 8 (suing DGC Brown in her individual capacity only)).

merely "add new factual allegations" to this portion of his complaint. (Doc. 51 at 9; *see also* Doc. 31 (noting that Plaintiff's amended complaint "sets out additional events that took place after the filing of Plaintiff's original complaint")).

Because Plaintiff clarified that he is not seeking to add DCS Arbaugh as a defendant regarding this count, the Court need not address the Magistrate Judge's recommendation on this matter.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Ward's "Written Objections to Report and Recommendation" (Doc. 51) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation of Magistrate Judge John Z. Boyle (Doc. 47) is **ACCEPTED** and **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Ward's Motion for Leave to File Amended and Supplemental Complaint (Doc. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Lodged Proposed First Amended and Supplemental Complaint (Doc. 32) shall not be filed.

Dated this 4th day of December, 2025.

James A. Teilborg
Senior United States District Judge